Good morning. Thank you, Your Honor. This is, may it please the Court, this is Shane Kuhns appearing on behalf of Appellants Lake Lindero Homeowners Association and its property manager, Lord & Enterprises. Appellants request reversal of summary judgment granted to rescind the non-profit liability policy issued by Respondent Atain and for a determination that there was no material concealment upon which Atain probably and reasonably relied. Alternatively, Appellants request reversal and remand for trial of disputed issues of fact. The summary judgment was incorrectly granted in this case because the evidence did not support the summary judgment. The Court's order was inconsistent with the evidence as rescission was relying upon a combination of alleged concealed facts. The Court correctly determined that two of the three facts in this combination were, in fact, disputed, and thus did not support summary judgment. The third fact in the combination... We're reviewing this de novo, right? So what the lower court determined in that regard is neither here nor there. It is instructive. Yes, this is a de novo review. Traditionally, the lower courts have been viewed to be in a superior position to review the facts of the case. In this case, in looking at... On summary judgment, it's a... the facts are equally before us as they were before the district court. This court can make a different determination. I'm simply highlighting that the lower court looking at it made the determination that in the combination of the three facts, that two of the three were involving issues of disputed fact that would not support summary judgment. What was disputed about those two? The existence of the knowledge of the party who is preparing the... Why does his... That's Mr. Sigel, I think. Why is his knowledge of any relevance? It's a question of whether the entity as a whole, through its files or whatever, had been the he had adequately checked it out or not. That is one factor in the analysis in terms of what he did in order to understand the institutional knowledge, I think, is what your honor is referring to. So, so let's just so I understand your position. So a company is served with a formal complaint by a state agency and they make a claim against the entity. And someone who is preparing an insurance form misses that, doesn't go to the right accidentally or whatever. Does that matter for the purposes of this insurance contract? There was still a claim that had been filed against the entity that was not revealed to the insurer. That, your honor, is the crux of the factual issue that's in dispute. There was not a formal complaint. That is not the evidence that has been submitted. What has been submitted is over the objections of appellants. Well, I'm looking for example, the appendix at ER-998. Which is entitled before the Department of Alcoholic Beverage Control of the state of California in the matter of the accusation against Lake Linderow Homeowners Association. And it says there's a declaration that this complaint, this accusation as they call it, was duly served by mail on the two entities indicated there. Why isn't that enough? In order for it to be enough, it must be something that is probable and reasonable to affect the underwriting decision. No, that's the materiality question. That's a separate question. But you were asserting, if I understood what you just said and what you said in your papers, that the fact that the person preparing the insurance for Mr. Sigal didn't know about this is a defense. I don't understand how that could be. Well, there are multiple parts to it. One is the probability of reasonable influence test. But there's also a requirement in the law that minor indispositions are not subject to precision of a policy. And that's the materiality question, is it not? And we can take that up in a minute. But I'm trying to, if that's your sole point, let's take it up. But if you're saying you have a separate point, which is that Mr. Sigal didn't know about these claims. And that's a separate defense. That's what I'm questioning. Thank you, Your Honor. Yes, it's important that the party who's preparing an application in response to these questions understands and appreciates the significance of the information that's being sought. In this case, the testimony and the evidence before the court is that Mr. Sigal was newly elected to the board and requested and did a diligent search with its insurance broker to examine if there had been any prior complaints that he was not privy to by the fact that he was a volunteer elected to the board after these events occurred. And that diligent search did not find anything. So there's no knowledge or appreciation by Mr. Sigal at the time he was preparing the... I understand that argument, but I understand why it's relevant. If, in fact, the homeowner's association was served with these complaints, the fact that he missed it innocently or however, is neither here nor there, it seems to me. Then what the insurer needs to know is what are the facts? Have there been claims that have been filed against the homeowner's association? Your Honor would be correct in the first instance. The material question here is what does the insurer do with that information or what would the insurer have done had they known that information? And the evidence that's before the court here is that this insurer in its subjective evaluation did not view that fact independently. It only viewed the combination of the three facts as having an impact on its decision. So our contention... So if all three, in fact, constituted claims or complaints or whatever that should have been produced, should have been notified to the insurance company, then you would concede materiality, yes? That would be the testimony of the vice president for underwriting for Attain. But I don't think you, correct me if I'm wrong, I don't think you challenged that on the ground that the three would not be material. I think you challenged it on the ground that he was saying all three and in your view, it was either one or two and not all three. Because we're here on summary judgment, it is the burden for the insurer to put that forward. It is a subjective test. And for an insured to have evidence to contrast to the subjective understanding of the insured, that's rarely available. And the court, however, does not, even though the court does not have to accept the postmortem testimony of that materiality, in this case, it would be improper for the insurer to say that all three are necessary in order to de-material, it would be improper to extend and pick one out and say, well, two of them are, two of the legs of this three legged stool are disputed facts. And the third... No, I understand that completely. But my question to you is, if contrary to your argument, we think that all three should have been disclosed, do you then challenge and did you ever challenge that in that circumstance, the nondisclosure would be material? I think it's still important for the court to look at the nature and the substance and material of the alleged facts that have been concealed from the application. So you still have to go through, run through the probable and reasonable influence test, as well as the appreciable knowledge and understanding of the significance of that. Here we have information about predicting a future lawsuit, which the evidence is contested that there was plans to terminate and anticipation of a lawsuit from that. We also have a letter which, or a notice from the water board, which is not before the court, it's only referenced by multiple layers of hearsay as to what the contents of that were being deemed to be a complaint as required under the renewal application, as opposed to a mere notice of a maintenance license requirement, which the board of So understanding the significance that the insurance company might put on an issue of maintenance that is not even subject to the insurable risk, as a collective, the conclusion would not be that that would be a material reason for rescinding of the policy. Counselor, could you address the question 19 answer that deals with the imminent termination of the property manager? Because as I read the declaration of the insurers, whoever that person is, I can't remember her name. At the very end, she does say that the answer to question 19 alone would have caused us not to rescind the policy. And it seemed to me the facts on, as to question 19, were pretty compelling in the insurer's favor. So I'd like to at least hear your further response on that point. Sure. Thank you, Your Honor. With respect to question 19, it was effectively asking Mr. Siegel to and the board to have a crystal ball as to what would happen months after the preparation of the application. Anybody looking back in hindsight can say if we'd seen all these various different things, we can see how that led to a lawsuit. That would be true in the case of any dispute. Well, let me let me just run through the facts as I understand them, that were in Mr. Siegel's possession or at least in the possession of the board members at the time that he filled out the application. You tell me if I'm getting anything wrong. Number one, the current the then current board president had campaigned on a platform that explicitly involved the termination of this property manager, even though there were many, many more years left on the contract. Right. That's true. That's not in dispute, although it is subject to the hearsay objections. OK, well, all right. But so that's that's one thing. The other thing, though, that I thought was perhaps even more compelling was that at the time the insurance application was filled out, the board had already sent. I can't remember what the name of the notice is to the property manager saying basically you're on the hook for this $300,000 that we had to come out of pocket for to fix this whatever that thing is, that gate. And if you don't pay us in 15 days, we're going to terminate the contract. Now, there is just no scenario in which I can imagine that property managers. Oh, yeah. Let me write you a check for this $300,000. So those two facts alone, it seems to me, were plenty to satisfy the standard that question 19 pose, which is just other facts or circumstances out there that may give rise to a claim. There had already been a demand put to this property manager, a pretty forceful demand that you either pay us this money or we're going to terminate you. And if as has happened, the person didn't pay you, pay your client, then he was going to be terminated. And that's what happened. And now and there's a lawsuit. It just seems to me all of that was on the table when Mr. Siegel filled out the application. So help me understand why that's not enough to trigger a duty to answer question 19 in the affirmative. Thank you, your honor. I don't think that's correct. I think at the time that the application was being completed, there had been notices to perform set as required under the longstanding contract. This had been a management contract that had been in existence for a very long time. There was a long history of relationship and anticipated if the property manager did perform as required under the contract, that that contract would continue. It was the property manager, GPL, that instead decided to not perform as required under the terms of the contract and filed a lawsuit. OK. All right, counsel, you can see that your time will give you a minute for rebuttal. Thank you. Response. Good morning, your honors. This is Gail Stargardner. I represent a teen specialty insurance company. Judge Fisher followed the well-settled law in California on rescission. And under California law, any misrepresentation, a single misrepresentation, if it is material, is sufficient to entitle a teen to rescind the policy. What Jessica Suda testified to when you look at her declarations, both of them as a whole, was that a teen considered each question on its application material or the responses material to its decision whether or not to issue a policy. That if Lakeland Arrow made a misrepresentation in response to number 18, that was sufficient to cause the policy not to be issued. If it made a misrepresentation as to question 19, that in and of itself was sufficient for a teen not to issue the policy. The facts are undisputed. And Judge Fisher decided, I don't understand why she felt there was an issue of fact as to the ABC complaint, because I think as Judge Rakoff discussed, it's crystal clear that Lakeland Arrow was on notice of that complaint. It was a complaint. They negotiated a settlement of that complaint. And so clearly they had notice of that. But she also said... I thought, can I stop you? Can I stop you there? I thought the issue that the judge found there was that there was a disputed issue of fact as to whether, let me see if I'm remembering this right, that I guess that the current board members, the then current board members had knowledge of that because the old board had been voted out by then. And as I understand it, nobody on the current board had any knowledge of that several year old complaint that had been filed by the ABC. But even assuming that the current board didn't know that knowledge is in yours to the board, the information was known to the, at the time, the property manager. And so that information is known by Lakeland Arrow as an entity. It's there. They have access to it. And again, whether or not they negligently failed to disclose it because they didn't discover it, that information was still there and available to them. But in any event, Judge Fisher did correctly determine that the second issue, the Water Resource Control Board Complaints slash Inquiry, whatever we wish to call it. Well, that's the problem. It really didn't fit, at least based on the facts we have before us now, what we know about that didn't really fit any of the descriptors in question 18, did it? Sure it does. Because it's what had happened was, and was that property owners in the complex made a series of complaints to the Water Board. In the course of investigating those complaints, the Water Board said those complaints have no merit. But we find this other problem, this violation of regulations, and they filed proceedings, whether it's an inquiry, whether it's a complaint, seeking redress, correction of the assessing fees and penalties. Wait, wait, wait, that's what maybe I'm missing. I thought all we had was a letter from the Homeowners Association itself to its members mentioning that, oh, you know, by the way, we were alerted by the Water Board that we have to fix this problem. There was no, I don't remember any disclosure in that letter saying we were found to be in violation and they were about to assess penalties and that's why we had to act. I thought it was just a, it was a notification from the Water Board, but not a threat to bring any kind of proceeding or to assess any fees or fines. When you go through the letter to the Homeowners Association, what that letter references is a complaint made by the Water Resources Board, which required the Association to come up with $350,000. Oh, that's what I'm saying. I think that's the disputed point, as I see it, is that the reference to complaints in that letter was not to anything that the Water Board said. It was to the complaints from the residents that you mentioned that were found to be without merit. No, it was not. That's the problem. That is what Lakeland Darrow is arguing, but that doesn't make sense because when you read the letter in context, the letter states that the Water Resources Board received complaints in the plural from the homeowners and dismissed those complaints. From the homeowners, though. From the homeowners. But what the letter goes on to discuss is the fact that the Water Resources Board found that Lakeland Darrow was in violation of the regulation regarding the sluice gate in the lake, that an investigation was undertaken, and that the remedy to resolve that included the cost of repairs, fines, and penalties, which resulted in an assessment against all of the members of the Homeowners Association. There are a lot of moving parts to your argument, which is why I can see the district court saying there's too much to sort out here to say that there's not an issue of fact on it. You're reading a lot into that letter. But the court found, in fact found, that was the basis for the court's determination that Lakeland Darrow had made a misrepresentation on the application. I thought she thought there was an issue of fact on it. No. No, I'm sorry, Your Honor. Judge Fisher thought there was an issue of fact on the ABC Board complaint. She did not find an issue of fact with respect to the Water Resources Board complaint. Can you point us to the language? You keep referencing these fees and penalties or fines or whatnot. Where is that in the letter? Because that's what I'm not remembering. Where is the letter in the record, counsel? If you give me a few moments, I can... It is, let's see, 185. So it is 5ER-989. I don't have, I'll confess, I don't have the document in front of me. Can you just read the language you're relying on? I have it. So it starts on... 989. I'm sorry, I'm sorry, Your Honor. It starts on 5ER-987. In order to complete the work required and pay for the additional costs associated with the other state's agencies involved resulting from the complaint referenced above, which is the failure to comply with the sluice gate issues... No, that's what I think you're misinterpreting. It's referring to the complaint from the homeowners referenced above. No, Your Honor, because when you look at it, there were several complaints filed by the homeowners which the letter acknowledges were found to be without merit. The only complaint before Lake Landero Homeowners Association with respect to the Water Resources Control Board was the violation of the regulation regarding the sluice gate, which resulted in them being asked to pay $310,000 by a state agency resulting from the complaint with respect to the sluice gate. If they've dismissed the homeowners' complaints, which the letter acknowledges, the only thing left to be paid is the complaint about the violation of the state regulations regarding the sluice gate in the lake. Counsel, the whole first page of the letter, you said look at it in context. But the very first page of the letter talks about... It says the homeowners' association has been managing a complex set of issues, all of which resulted from a complaint filed by several lake residents with the state of California in November 2016. So that's the context actually, not the Water Board investigation, but the complaint from the residents. But when you read through the letter, it says that the Water Board dismissed the homeowners' complaints, but then the Water Board proceeded to enforce its complaint regarding the violation of the regulation regarding the sluice gate, which resulted in $310,000 worth of costs, penalties, fines being assessed against the homeowners' association. What page is that on, 988? ER 987. In order to complete work required and pay for the additional costs associated with other state agencies involved resulting from the complaint referenced above... That doesn't say what you're saying. Well, it does because when you look up above, what it's talking about is the fact that they had to repair the complaint that the Water Board... Where does it say the complaint from the Water Board? Where's that? On page 987, I don't see a reference to a complaint from the Water Board. It's a complaint. So I don't have it in front of me, but at least according to my notes, there's something at ER 277. I don't know if someone has that in front of them. May I have a moment to get the record? Sure. Thank you. Thank you. ER 277 is the Undisputed Material Facts and Supporting Evidence and the Opposing Party's Response and Supporting Evidence. And it's disputed. So that's a disputed fact. I'm sorry. Thank you. As I said, I don't have it in front of me, so... Do you have it, counsel, ER 277? Thank you, Your Honor. So if you turn to 5 ER 986. Counsel? Yes? Do you have ER 277 before you? Hang on a second. It's in a different volume. Oh, look. I just lost you. I do. So ER 277 is the... I handed you this, and I put it on the board. I lost everything there. Oh, I'm sorry. Do you want to... Could you stop the clock for a moment, Blanca? Just one more time. I have no idea what the password is. Hold it. Here's the password. Oh, this password. Okay. Judge Rakoff? I don't think he can hear us. I think he lost... Yeah, he said he lost. I think he can't hear us. That's the problem. We can hear him, but he can't hear us. There we go. Thank you. Okay. Sorry. Back, Judge Rakoff? Yeah, I am. Thank you very much.  So counsel, it's just going to page 277 in the record. Could we start the clock again, please? Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. So, counsel, would you agree that this was a disputed fact regarding the complaint filed by the Water Resources Control Board? No. Well, this says disputed... It says disputed to the extent the plaintiff relies on hearsay, but they don't dispute what the letter itself says. Well, that's your interpretation. Well, no. That's what it says. Okay. It says disputed to the extent that plaintiff relies on inadmissible hearsay with no personal knowledge in asserting this fact. And they also dispute that defendants had knowledge at the time of completing that the former would sue defendants. But that doesn't go to the fact... They don't dispute the fact of what the October 27, 2017 letter states, nor can they. In paragraph 2 on page ER-986 states, after the state had determined the homeowner's complaints had no basis, they also advised the association that had an obligation to comply with the terms of a license issued in 1965. And then it goes on, paragraph 3 starts with, it has been determined that the gate valve was installed and has been inoperable on page ER-986. That's not linked to the Water Board complaint, though, counsel. Well, it is, because what this letter talks about is the fact that the Water Board, in the process of reviewing complaints it dismissed, filed a separate inquiry complaint or a request. And again, the Board itself calls it a complaint, which required this undertaking. And there's no dispute that the Board itself calls it a complaint. There's no dispute that it's an inquiry. Where in this letter does it say Water Board complaint? Where? Well, may I go into 986 to the letter there? It says in the second paragraph, after the state had determined that the homeowner complaints had no basis, they, meaning the state, also advised the association that it had an obligation to comply with the terms of a license issued in 1965 in favor of the association. And they go on to say that... They had no knowledge. The Board had no knowledge. The Board had no knowledge of this. It seems to me that a statement from the state that it had an obligation to comply and then the fact that they hadn't complied might be a claim. And indeed, of course, it wound up paying a bunch of money. Well, the issue is whether or not there was a material issue of fact on that. The problem I have is if you're trying to do all of this interpretation of what the words mean and what the background is, that's an issue of fact as to what was signified by this and what are the facts surrounding it. The letter to me is not clear. It's not about what the Water Board... I don't see the word that the Water Board had a complaint. There's a license that has not been complied with. That's not a complaint, a formal complaint from the Water Board to me. It is in the sense that not only is the association required to pay sums of money as a result of this, but when you look at the other documents submitted in the declarations by Smith, Barone, and even Siegel, they acknowledge, those declarations acknowledge that this was a complaint filed by the Water Board. Those are their words. And that this complaint resulted in payment of fines, assessments against the homeowner... Fines? Recall of the award... Counsel, according to the record, does it say that there was a fine paid? I'm sorry, you're correct. It says required to pay for work and pay additional costs associated with the other state agencies involved resulting from the complaint referenced above. Right, so if there were fines paid, I think your argument would be stronger that there was a complaint from the state. That's why I asked you about that precise word. Because the payment of a fine does indicate that there was a complaint by the state. But repairing the gate is not necessarily indicative of the fact that the state has filed a formal complaint. But again, the wording of the question is, is it an inquiry? Is it a claim? So I think the question itself is broad enough. All right, Counsel, you've exceeded your time. Could you wind up, please? Sure. I think what the evidence in this case is that Lakeland Darrow Homeowners Association misrepresented the answer to question 18, either based on the ABC complaint, either based on the Water Resources Board, or both. Clearly, they failed to truthfully respond to question 19. Either no response as the undisputed testimony from ATTAIN would support rescission of the policy. ATTAIN met its burden of proof. The evidence submitted was admissible. All inferences from all of the evidence submitted by ATTAIN support that this policy should be rescinded. Thank you. All right, thank you, Counsel. Any questions from the panel? All right, one minute for rebuttal. Thank you, Your Honor. Two points. To readdress the question from Judge Arkoff regarding the 2015 ABC complaint, I'd note that the policy has a severability provision in it, which provides that except for material facts or circumstances known to the person or persons signing the application, no statement in the application or knowledge or information possessed by an insured shall be imputed to any other insured for the purposes of determining the availability of coverage. That, I think, addresses the question in terms of Mr. Siegel's knowledge at the time. I don't understand that argument. I thought what that clause is all about is that if an individual board member, for example, is insured and then turns out they have liability or something, that liability is not imputed to other individual board members. We're talking about the entity here, not the individual board members. The knowledge in question, the 2015 ABC complaint, would have been in the possession of GPL, the property manager who handled exclusively those matters at the time. So at the time, Mr. Siegel was signing the renewal application. It was not before him. The other point that I'd like to just follow up on is that I think the court's inquiry with respect to the October letter from the board to the homeowners is correct. The most reasonable inference that can be drawn there is that complaint only refers to the complaint that was lodged and found to be meritless by Lake residents. The letter merely states that the association was advised. It received some kind of notice, not that it was in violation of anything, but that there was a requirement that during certain months of the year, they had to allow water to flow. They did in fact do that. So there was never a violation. It was a forgotten requirement by everyone for over 50 years. And as soon as it was brought to their attention, the board pumped water for that season and then spent $300,000 plus to repair the sluice gate so that they wouldn't have to pump water in future seasons. But there is no mention in the evidence of any fines or obligations to the state as a result. The cost of repair and the special assessment was merely the homeowners making the... Question 18 is not limited to complaints. It refers to inquiries, complaints, notice of hearing, claim, or suit. Is there any... I meant to ask this of your adversary as well. Is there any California case construing that language or any nice circuit case construing that language? Not that I'm aware of specifically, although there is mention in discussion in the cases about what a lay person understands in terms of answering questions to these types of inquiries. So it does go to a very factual latent determination. And in this case, because it's before the court as a summary judgment, any reasonable inference needs to be tipped in the favor of the insured. And that would be the question that would be determined by the trier of fact after the full hearing of the evidence. And if I may, Judge Rawlinson, let me put the same question to adversary counsel. Do you know of any California case or nice circuit case construing language for question 18? My recollection is that case law says that a claim can be any demand for money. I don't know that there's any case law that discusses the word inquiry. Thank you. All right. Any further questions from the panel? It appears not. Thank you to both counsel for your argument. The case just argued is submitted for decision by the court. The final case on calendar Martin versus Hunter has been submitted on the brief that completes our calendar for the morning. We are in recess until 930 a.m. tomorrow morning. This court stands in recess until 930.
judges: RAWLINSON, WATFORD, Rakoff